ESTATE OF ORTIZ *v.* ESTATE OF ORTIZ.

APPEAL from the District Court of Guayama.

No. 10.—Decided May 25, 1905.

EVIDENCE—BURDEN OF PROOF—OBLIGATIONS.—The burden of proof is on the
party demanding compliance with an obligation to show the existence of the
same.

ID.—TESTIMONY OF WITNESS.—The determination of the probatory value of the
testimony of witnesses is not a matter which is purely discretionary with the
courts, because they must conform, in making such determination, to the
rules of sound judgment.

The facts are stated in the opinion.

*Mr. Rossy,* for appellant.

*Messrs. Hartzell and Rodríguez Serra,* for respondent.

MR. JUSTICE FIGUERAS delivered the opinion of the court.

On June 27, 1904, Attorney José R. Aponte filed a complaint in a declaratory action, with all the documents he considered necessary to establish the capacity and right of action of his clients, in the court of Humacao, on behalf of José Ortiz, in his own right and as the guardian of the minor children of Manuel Ortiz, Juana María and Regino Ortiz, against the Estate of Regino Ortiz, composed of Nemesia, Josefa, Juana Francisca and Regina Ortiz, all of them under age and represented by their natural mother, Rosario Cintrón, to secure the execution in favor of his clients of a deed of sale to a portion of land and a part of an urban estate which their predecessor in interest, Regino Ortiz, had sold them, according to a private document, which reads as follows:

"On this date I sell to my brothers, Manuel and José Ortiz, the
cattle belonging to me on the Estefanía estate, in addition to the part
of land thereof which constitutes my share and a house on '4 calles,
Arroyo,' all for the sum of 2,000 *pesos,* which sum has been received
in provincial money to my entire satisfaction.—Regino Ortiz.   Witness: Ceferino Laguá.   Witness: J. M. Martínez.   In addition I sell

them a bay mare with a horse colt; another bay mare, without brood; another filly, bay and black, and another bay and black filly, all for the sum of 200 *pesos*. This sum I have not received, and it is left for a house in the name of Nemesia, Josefa and Juana Francisca, my daughters, their mother having the right to enjoy it.—Arroyo, August 10, 1899.—Regino Ortiz.—Witnesss: J. M. Martínez.—Witness: Ceferino Laguá."

The purchaser, Manuel Ortiz, died, and for this reason the action is brought in the name of his children, represented by their guardian, José Ortiz, who, likewise as the purchaser in the document above inserted, and as the vendor, Regino Ortiz, also died on December 3, 1899, the action is directed against his daughters, represented by their natural mother, Rosario Cintrón.

With these antecedents the said complaint is filed, there being cited in support thereof the general provisions of the Civil Code relating to contracts, some referring to the efficiency thereof, especially subdivision 1 of section 1280, which provides that contracts the purpose of which is the transfer of property rights in real property shall appear in a public instrument, other sections relating to the nature and form of a contract of sale, and several relating to successions.

The mother of the minor defendants, in making answer to the complaint, denied the authenticity of the private document which is the principal basis of the complaint, and adds that, even though it were authentic, it does not constitute any contract whatsoever, praying, therefore, that it be declared void, inefficient and false, not only because it lacks the essential requisites of every contract, but because it does not contain the formalities prescribed by the law. At the same time she filed a cross complaint and prayed that the plaintiff, José Ortiz, be adjudged to make immediate delivery to the minor defendants of the property left by their father, Regino Ortiz.

This action, under the act providing for the reorganiza-

tion of the judiciary of Porto Rico, approved March 10th of last year, passed to the District Court of Guayama, where it was prosecuted, and the judge, after hearing the evidence, consisting in documents and the testimony of witnesses, decided:

"That the law and the facts are in favor of the defendants and that they be relieved of all demands with respect to this complaint, with the costs of these proceedings against the plaintiff, and that execution issue against his property to satisfy this judgment. Given, pronounced and published in open court this 30th day of December, 1904.—Charles E. Foote.—Angel García, secretary."

From this judgment José Ortiz took an appeal in his own behalf and on behalf of those he represented, through Attorney Enrique Lloreda, who, on January 23, 1905, so informed the opposite party in writing, through José J. Vidal, the marshal.

The proper certified copies were presented to this Supreme Court by counsel for the appellant, and Manuel F. Rossy presented in his name a brief in which he gives a statement of the proceedings, the result of the evidence, which he construes in his favor, praying that the complaint be sustained, with the costs against the party defendant.

The respondent entered an appearance through Hartzell and Rodríguez Serra, and after making an analysis of the evidence, which he considers insufficient for the purpose sought by the plaintiff, he maintains that the court of Guayama had the discretionary power to weigh the evidence of the witnesses heard in these proceedings, and this judicial discretion is not subject to review, especially when the appellant does not allege and prove in a satisfactory manner that an error has been committed in weighing such evidence; and for these reasons this party maintains that the judgment should be affirmed, although it is suggested that the judge should have passed on

the cross complaint filed by the defendant at the time of making answer to the complaint.

The question becomes clear and simple. An action is brought based on a private document drafted in an incorrect and anomalous form, and it is sought to have the children of the vendor execute, through their legal representative, who is their mother, a deed of sale in favor of the plaintiff to all the property referred to in said private document.

The defendant denies the authenticity of this document, and, the issue being thus joined, it was the duty of the plaintiff to comply with the provisions of article 1214 of the former Civil Code, which is equivalent to section 1182 of the Revised Code, which prescribes that the burden of proof of obligations is upon the party who seeks their enforcement. Has the plaintiff complied with this provision? Let us see.

He introduces as a witness in the first place José María Martínez, one of the witnesses who signed the private document, and he naturally acknowledges his signature, states that the signature of the vendor is similar to the one which he used; that the document was given to him by said gentleman to sign; that there were present Manuel and José Ortiz, the purchasers, and in addition Juan Anaya, Cornelio Anaya, Luis Vans and other persons whom he does not remember; that, although he lived next door to the house of Regino, he does not know whether the latter was sick nor does he know whether anything of importance occurred in said house the day the document was signed; that since the document was signed he had known the purchasers, Manuel and José Ortiz, to be in possession of the "Orozco" or "Estafanía" estate.

Witness Luis Vans testified that he was, one day in 1899, in the house of Regino Ortiz, and that there a document was drawn by which the latter transferred what he had to his brothers, Manuel and José, and that he knew this because the latter had told him; that he cannot recognize the document,

because he did not read it; that the day the document was signed nothing of importance occurred in the house of Regino.

Witness Juan Anaya testified that Regino Ortiz had written the document; that he was in the house because he was a member of the household; he recognizes the signature of Ortiz, and states that he knew of the contents of the document because he was informed thereof by Manuel and Pepe Ortiz; that he does not know whether the son of Regino died the same day the document was signed or not.

Pedro J. Massanet, as the municipal judge of the town of Arroyo in 1892, recognized his signature on two certificates of birth of two daughters of Regino Ortiz, and adds that the signature of the latter which appears on the certificates was placed thereon in his presence, and that said gentleman, with whom he was acquainted, appeared in person and signed.

Witness Miguel Llanó, who as a witness signed the certificates of the record of the birth of two daughters of Regino Ortiz, states that he was acquainted with the latter; that he saw him sign, and, comparing his signature with that on the private document, he stated that it looked like his, that they appeared alike, and that the handwriting was the same.

The defendant presented the following witnesses:

Enrique Vidal lived at that time in the house of Regino Ortiz, attending him during his serious illness; he stated that he was in bed, and that in addition to his illness he was half crazy on account of the grave condition of his son, whom he loved dearly; that said son died on August 10, 1899, but that he did not tell Regino this in order not to make his condition worse; that he is acquainted with José Martínez and Ceferino Laguá (the two who signed the document as witnesses); that said individuals were not in the house of Regino Ortiz on August 10, 1899, and that he saw Martínez only in the night at the wake held for the dead child; that twelve or fourteen days after the death of Regino Ortiz, the father of the dead

child, Ortiz came to see him and told him that the mother of the children of Regino was a young woman and might squander the property belonging to her children, and presented to him a document for signature as if the deponent had been present at an agreement made between the brothers, Ortiz, Regino, Manuel and José; that when they brought him the paper it bore no signatures at all, and much less that of Regino, because he had already died of tuberculosis of the lungs.

Deogracia Mariani also speaks of the grave condition of Regino Ortiz and of the death of his child on August 10, 1899; that he never saw either Luis Vans or José Martínez in the house of Regino; that Regino had charge of his property, and when he was very ill he rendered his accounts as a dairyman, which the witness was for the wife of Regino, named Rosario Cintrón.

Federico Virella also testified to the gravity of the condition of Regino and the death of his son on the date mentioned; that Regino managed his business as long as he could; that after his death José Ortiz turned receipts over to the wife; that on August 10, 1899, he was in the house of Regino to attend the funeral of his son; that he frequently went to see Regino because he was a Mason and that he had been commissioned by the lodge to inquire after his health, and that on that day he was sick in bed.

Marcos Basora, also a witness for the defendant, testified substantially the same as the preceding witness.

After having carefully studied the matter now submitted to our examination, the conclusion is reached that the trial court properly weighed the testimony of the witnesses, which is really the only means of deciding the contention; but the judge of the Guayama court has no discretion in this case, but the weighing of evidence of this character must conform to the rules of sound judgment, rules which must also be considered by this Supreme Court in deciding the question submitted for its consideration.

In the first place, attention is attracted to the fact that the document being signed by Regino Ortiz as vendor and he having died, the signature should not have been examined by handwriting experts and compared with other unquestionably genuine signatures in order to determine its authenticity which has been denied by the opposite party. It is also peculiar that said document having been signed as a witness by Ceferino Laguá, he should have failed to testify as to the truth of the contract and the genuineness of his signature and that of the vendor, Regino Ortiz.

It does not matter that the other witness, José M. Martínez, should have fulfilled these requirements, because this testimony must be accepted with some reservations, inasmuch as he was unaware of an important event which would bring sorrow and sadness to Regino Ortiz, as the death of his eldest son, which occurred the same day on which Martínez states the document was signed. This date should not have been forgotten by Martínez.

It is also very strange that if Regino Ortiz received the price of the sale of the land prior to the date of this document a day of such sorrow for Regino and his family should have been selected to draw and sign this document. If Regino had already received the price of the sale of the land there was confidence in him, and nothing was being risked anew by waiting a little longer until the resignation of the afflicted father had begun.

The other witnesses for the plaintiff by their testimony throw no light upon this matter, so much so that Luis Vans and Juan Anaya did not read this document, according to their statement, and knew of its contents by hearsay from Manuel and José Ortiz, who were interested in the contract as purchasers.

But let us see how contradictory everything is, and how shadows and doubts remain in the mind of a strict judge.

Enrique Vidal lived, on August 10, 1899, in the house of Regino Ortiz, who was seriously ill, and under the grief of having lost a son on that day, he did not see throughout that day in the house any of the witnesses who signed the document, nor did he know of any transaction having been made; and he adds that twelve or fourteen days after the death of Regino Ortiz, under the supposition that his widow would squander the property of her children, José Ortiz proposed to him that he sign a document showing an agreement to have been entered into between the brothers Ortiz, which Vidal refused to do.

All the other witnesses agree as to the grave condition of Regino and the death of his son on August 10, 1899; all of them were in the house at different hours and none of them say anything with reference to the drawing or signature of this document, and it is to be presumed that nothing was done on this day of sorrow and affliction for the family of Regino Ortiz. To suppose the contrary is inhuman, when there is nothing to show the necessity and urgency of such action.

All of these reasons are convincing of the propriety with which the judge of the Guayama court acted in deciding as he did this litigation between members of the same family, in which interests are involved which may pertain to the minor children of the defendant.

The judge did not decide anything in his judgment with regard to the cross complaint filed with answer to the complaint, but the judgment was accepted by the defendant, and in addition to the record not containing sufficient grounds for a conclusive decision on this point, it would, if decided in this instance in favor of the cross complaint, deprive the plaintiff of the right of appeal with respect to the cross complaint, which would be neither just nor equitable.

Therefore, believing that the judge has properly acted within his discretion and good judgment in this matter, we

recommend that his judgment be affirmed, with the costs against the appellant.

*Affirmed.*

Chief Justice Quiñones and Justices Hernández, MacLeary and Wolf concurred.